UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JACQUELYN C. O/B/O
C.J.N.,

                    Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

19-CV-1647-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14)

Plaintiff Jacquelyn C.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on behalf of her minor child, C.J.N., seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 9) is denied and defendant's motion (Dkt. No. 12) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

On May 13, 2016, plaintiff applied for SSI on behalf of C.J.N., a child under age eighteen, alleging disability beginning April 26, 2016, due to heart problems and pulmonary hypertension. (Tr. 15, 125-30, 142)[3] Plaintiff's claim was denied at the initial level, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ") on November 16, 2018. (Tr. 15-29, 55-60, 63-65) The Appeals Council denied further review of the ALJ's decision on October 10, 2019. (Tr. 1-6) This action followed. (Dkt. No. 1)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

---

[2] The Court presumes the parties' familiarity with the case.

[3] References to "Tr." are to the administrative record in this case. (Dkt. No. 6)

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. *Id.*

3

If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* § 416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* § 416.924(d).

    III.    <u>*The ALJ's Decision*</u>

The ALJ first found that C.J.N. was a newborn/young infant on the date of the application and an older infant at the time of the hearing decision. (Tr. 18) The ALJ then followed the three-step process for evaluating C.J.N.'s SSI claim. At the first step, the ALJ found that C.J.N. had not engaged in substantial gainful activity since the date of his SSI application. (Tr. 18) At the second step, the ALJ determined that C.J.N. had the severe impairments of dysplastic tricuspid valve with regurgitation, patent foramen ovale ("PFO"), history of supraventricular tachycardia ("SVT"), history of pulmonary hypertension, tracheomalacia with asthma-like symptoms, and language and motor delays. (Tr. 18) At the third step, the ALJ found that C.J.N. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19) The ALJ then proceeded to consider whether C.J.N. had an impairment or combination of impairments that functionally equals the Listings, but concluded that he did not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 19-29) As a result, the ALJ found that C.J.N. had not been disabled within the meaning of the Act. (Tr. 29)

IV.   *Plaintiff's Challenges*

Plaintiff seeks remand of the Commissioner's decision on the following grounds: (1) the ALJ based his determination of C.J.N. within the six functional domains upon his own lay interpretation of the medical data and failed to develop a complete record; and (2) the ALJ improperly evaluated C.J.N.'s functioning within the domains of acquiring and using information, interacting and relating with others, moving about and manipulating objects, and health and physical well-being. (Dkt. No. 9-1 at 1, 12-30)

### A. Evaluation and Development of the Record

Plaintiff first argues that "[t]he ALJ determined that C.J.N. did not functionally equal the listings under the six functional domains based upon his own lay interpretation of raw medical data, rather than upon the opinion evidence from a trained medical professional, as he gave the only opinion of record, a stale opinion that could not constitute substantial evidence, only some weight, and then he failed to develop the record for additional opinion evidence . . . ." (Dkt. No. 9-1 at 12)

In evaluating the overall record in this case, the ALJ considered the State agency medical consultant's November 3, 2016, opinion finding that C.J.N. had less than marked limitation in the domain of health and physical well-being, and no limitation in each of the other five functional domains. (Tr. 23, 49-53) The ALJ afforded this opinion "some weight" as it related to C.J.N.'s physical impairments. (Id.) However, the ALJ noted that since the assessment, C.J.N. started receiving services for motor and language delays, which, as discussed more fully below, the ALJ found resulted in limitations in other functional domains. (Tr. 23, 24-29) Additionally, the ALJ explained that since the consultative opinion was rendered, subsequent evidence demonstrated that C.J.N. had received significant treatment for pulmonary concerns of wheezing and cough, which the agency physician was unable to assess. (Tr. 23)

Plaintiff argues that the ALJ erred in assigning any weight to the consultative opinion because it was stale. (Dkt. No. 9-1 at 12-14) Generally, "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and "[m]edical source opinions that are stale and based on an incomplete medical record

6

may not be substantial evidence to support an ALJ['s] finding." *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted). Nonetheless, a medical opinion is not rendered obsolete merely due to the passage of time. *See Cruz v. Comm'r of Soc. Sec.*, No. 16-CV-00965, 2018 WL 3628253, *6 (W.D.N.Y. July 31, 2018) ("A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition.").

While plaintiff cites to later treatment notes and evidence post-dating the consultative medical assessment, the ALJ acknowledged that subsequent evidence in weighing the opinion and, as a result, found greater limitations than the agency physician's opinion in the domains of acquiring and using information and interacting and relating with others. (Tr. 19-29, 49-50) *See, e.g., Thompson o/b/o E.I.E.G. v.* Berryhill, No. 17-CV-901, 2019 WL 590680, at *4 (W.D.N.Y. Feb. 12, 2019) (ALJ did not err in relying on allegedly "stale" State agency medical consultant's opinion which was rendered prior to the generation of subsequent medical records). The ALJ appropriately weighed the consultative opinion in the context of the overall record, and although the ALJ ultimately concluded that C.J.N. was more limited based on subsequent evidence, the assessment nevertheless supports the ALJ's conclusion that the record failed to support that C.J.N. had at least two marked or one extreme limitation in the functional domains. *See id.*

In a related argument, plaintiff contends that the ALJ was obligated to order a consultative examination or re-contact C.J.N.'s medical sources to obtain a medical

7

opinion upon which to base his functional domain findings because the consultative opinion was stale. (Dkt. No. 9-1 at 14-15)

The ALJ in this case appropriately evaluated C.J.N.'s functional impairments based on the record as a whole, including testimony from plaintiff and her husband regarding C.J.N.'s alleged limitations, C.J.N.'s medical treatment records, and the consultative opinion. (Tr. 19-29) See 20 C.F.R. §§ 416.924, 416.924a, 416.924b, 416.926a. The ALJ's duty to further develop the record, which may include ordering a consultative examination or re-contacting a medical source in some circumstances, is implicated only where the overall evidence is insufficient for the ALJ to reach a conclusion as to whether a claimant is "disabled" within the meaning of the Act. See 20 C.F.R. §§ 416.919a(b), 416.920b(b); see also, e.g., Janes v. Berryhill, 710 Fed. Appx. 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'") (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). Where, as here, "there are no 'obvious gaps' in the administrative record, the ALJ 'is under no obligation to seek additional information in advance of rejecting a benefits claim.'" Laboy o/b/o ASC v. Saul, No. 18-CV-00825, 2019 WL 6485172, at *2 (W.D.N.Y. Dec. 3, 2019) (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999), in turn quoting Perez, 77 F.3d at 48). The ALJ did not breach his duty to develop the record by not obtaining another medical opinion upon which to base his decision. See id. (ALJ appropriately relied on allegedly "stale" State agency medical opinion and did not fail to develop record nor err by declining to order consultative examination to assess child's impairments). As discussed below, the record contains substantial evidence to support the ALJ's determination.

### B. Domain Findings

Plaintiff argues that "[t]he ALJ improperly found that C.J.N. had less than marked limitations in the domains of acquiring and using information, interacting and relating with others, and health and physical well-being and no limitations in moving about and manipulating objects, despite evidence that supported at least marked limitations in these domains." (Dkt. No. 9-1 at 15)

The ALJ in this case concluded that C.J.N. had no or less than marked limitation in those functional domains. (Tr. 19-29)

<u>Acquiring and Using Information</u>

The domain of acquiring and using information relates to how well a child acquires or learns information, and how well the child uses the information he or she has learned. *See* 20 C.F.R. § 416.926a(g). The Commissioner's regulations provide that a newborn/young infant (i.e., birth until the attainment of age 1) should be able to show interest in, and explore, his or her environment, such as reaching for a toy. *See* 20 C.F.R. § 416.926a(g)(2)(i). At first, the child's actions are random, but eventually, the child's actions should become deliberate and purposeful, as when the child shakes noisemaking toys like a bell or a rattle. *Id.* The child should begin to recognize, and then anticipate, routine actions and events, such as grinning with expectation at the sight of a stroller. *Id.* In addition, the child should recognize and gradually attach meaning to everyday sounds (such as when hearing the phone or his or her name), and eventually should recognize and respond to familiar words, including family names and what favorite toys and activities are called. *Id.*

To be age-level in the domain of acquiring and using information, older infants and toddlers (i.e., age 1 to the attainment of age 3) should understand that words represent things, and that words are simply symbols or names for toys, people, places, and activities. See 20 C.F.R. § 416.926a(g)(2)(ii). Older infants and toddlers should refer to themselves and things around them by pointing and eventually by naming, begin to respond to increasingly complex instructions and questions, and produce an increasing number of words and grammatically correct simple sentences and questions. Id.

In this domain, the ALJ found that C.J.N. had less than marked limitation. (Tr. 23-24) In reaching this finding, the ALJ cited evidence showing that C.J.N. had limitations in receptive and expressive language, which affected his vocabulary as well as his ability to name or relate things. (Tr. 23; see Tr. 622-25 (1/16/18 Speech/Language Supplemental Evaluation), Tr. 758-61 (9/18 Early Intervention Program ["EIP"] Quarterly Report), Tr. 762-63 (6/18 EIP Quarterly Report)). The ALJ specifically observed that the January 2018 Speech/Language Supplemental Evaluation report indicated that C.J.N.'s receptive language skills were below age expectations, and that his expressive language skills were found to be two standard deviations below the mean, with commensurate pragmatic language skills. (Tr. 22; see Tr. 622-25) But as the ALJ also observed, the record indicated that C.J.N.'s vocabulary was increasing, and he was otherwise able to interact with objects, such as toys or pictures, in a non-verbal fashion. (Tr. 22, 24; see Tr. 758-61, 762-63) Although Plaintiff disagrees with the ALJ's evaluation of that evidence because the cited reports indicated that C.J.N. was making slow progress and required an increase in the frequency of services, see Dkt. No. 9-1 at 24-25, that does not render

erroneous the ALJ's observation that those records showed some improvement in his ability to acquire and use information. (Tr. 22, 24; see Tr. 622-25, 758-61, 762-63)

The ALJ reasonably found that while the overall record demonstrated that C.J.N. had less than marked limitations in acquiring and using information, notwithstanding plaintiff's disagreement with the ALJ's treatment of the evidence. *See, e.g., Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the [claimant]'s view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*.") (emphasis original); *Torres o/b/o J.L.M.C. v. Saul*, No. 19-CV-0072, 2020 WL 3046084, at *5 (W.D.N.Y. June 8, 2020) ("The relevant question is not whether there might be some evidence in the record supporting Torres' position, but rather whether substantial evidence supports the ALJ's decision.").

### Interacting and Relating with Others

The domain of interacting and relating with others refers to how the child initiates and sustains emotional connections with others, develops and uses the language of her community, cooperates with others, complies with rules, responds to criticism, respects and takes care of the possessions of others. See 20 C.F.R. § 416.926a(i). To be considered age-level in this domain, a newborn/young infant should begin to form intimate relationships at birth by gradually responding visually and vocally to his or her caregivers, and should begin to develop speech by using vowel sounds and later consonants, first alone, and then in babbling. See 20 C.F.R. § 416.926a(i)(2)(i). Older infants and toddlers (age 1 to the attainment of age 3) are still dependent upon caregivers, but should begin to separate from them; they should begin initiating and maintaining interactions with

adults, but also show interest in and eventually interact with other children their age; and they should be able to spontaneously communicate their wishes or needs, first by using gestures, and eventually by speaking words clearly enough that people who know them can understand what they are saying most of the time. See 20 C.F.R. § 416.926a(i)(2)(ii).

In this domain, the ALJ found that C.J.N. had less than marked limitation. (Tr. 24-25) The ALJ specifically acknowledged that, due to his delays in receptive and expressive language, there was evidence that C.J.N. was difficult to understand, and that he used few words to communicate his wants and needs. (Tr. 26; see Tr. 40, 622-24, 762) The ALJ also observed that C.J.N. was otherwise happy and cooperative with evaluators, and was noted to get along well with his parents and siblings. (Tr. 26; see Tr. 39, 591 (behavior described as generally happy and content with occasional temper tantrums), Tr. 665 (behavior described generally happy and content with normal intermittent crying; "does play pat-cake, wave bye-bye and play ball with examiner"), Tr. 695, 714 (C.J.N. "was happy to interact with the evaluators" and "made eye contact, smiled, and vocalized during the evaluation"), Tr. 731 ("can be shy for a few minutes around unfamiliar adults, not shy around other children").

Plaintiff argues that it was improper for the ALJ to "suggest" that C.J.N.'s lack of behavior impacted his lack of marked limitations in light of his speech limitations. (Dkt. No. 9-1 at 26) Upon review of the ALJ's decision, however, the Court finds that the ALJ considered all of the appropriate regulatory factors, including C.J.N.'s speech and language abilities. See, e.g., Kittles ex rel. F.L. v. Barnhart, 245 F.Supp.2d at 489 (E.D.N.Y. 2003) ("a child's problems with speech and language now need to be assessed

in both the 'acquiring and using information' domain as well as the 'interacting and relating with others' domain.") A review of the record reveals the following:

On January 13, 2017, C.J.N. underwent a Core Developmental Assessment with a physical therapist and an occupational therapist due to his parents' concerns regarding his development. (Tr. 713-20) The assessment revealed that C.J.N. was demonstrating skills at the following levels: gross motor skills, six months severe delay; fine motor skills, six to seven months or within low normal limits; adaptive skills, four to six months or severely delayed; and cognitive, communication, and social emotional skills, eight to nine months or within age expectancies. (Tr. 719) According to an EIP Individualized Family Service Plan, C.J.N. would receive in at-home physical therapy and speech/language services each once a week. (Tr. 731-44)

On May 9, 2017, C.J.N. was seen at Kaleida Health Robert Warner M.D. Center Ambulatory Care Clinic. (Tr. 664) Developmental assessment findings indicated that problem solving was normal, language was normal, gross motor was suspect, and fine motor was normal. (Tr. 664) The diagnostic impression was that C.J.N. had a mild gross motor delay consistent with a need for physical therapy. (Tr. 664)

On January 16, 2018, C.J.N. underwent an EIP Speech/Language Supplemental Evaluation due to concerns regarding his communication abilities. (Tr. 622-25) During the evaluation, C.J.N. needed prompts to continue to attend to adult directed tasks, but was easily redirected; he was able to use problem solving skills and followed a few simple directions with prompts; he did not use much spontaneous verbal speech as most verbal speech was prompted; he was very quiet when he was playing or used babbled speech or sound effects; and his father reported that he was not consistently using single words

13

to make requests or label objects or pictures. (Tr. 622) His receptive language skills fell more than one-and-a-half standard deviations below the mean; expressive language skills were more than two standard deviations below the mean; his pragmatic skills were commensurate with his expressive language skills; speech production/articulation assessment was not attempted due to his limited use of words; and oral motor examination was not completed due to his young age and lack of familiarity with the evaluator. (Tr. 622-24) Additional services were recommended to promote his receptive language, expressive communication, and speech production skills. (Tr. 624).

In June, 2018, an EIP Quarterly Report indicated that C.J.N. had readily participated in various play activities (including blocks and sticker activities), was observed to use gestures and nonspecific vocalizations to indicate wants and needs and would point toward an item of interest, followed simple directions with encouragement, and was able to match block shapes to shadow pictures with minimal assistance. (Tr. 762) He had not been observed to point to named pictures in books, attempts to elicit vowel imitation had not been successful, and his parents reported that he used a few single word approximations within functional contexts. (Tr. 762) The evaluator noted that C.J.N. was currently demonstrating skills at a greater than 33 percent delay, that his parents has not expressed additional concerns since his initial evaluation, and that he would continue to receive weekly speech therapy. (Tr. 762-63) The September, 2018, EIP Quarterly Report stated that C.J.N. was still demonstrating skills at a greater than 33 percent delay, and his overall progress appeared slow, so it was recommended that speech therapy be increased to twice a week to improve communication skills. His

parents reported that he was using a few single word approximations and rote phrases within functional contexts, and had begun imitating words and phrases. (Tr. 758-61)

The ALJ summarized these records in evaluating the record evidence, and later cited to this evidence in analyzing the domains of both "Acquiring and Using Information" and "Interacting and Relating with Others." (Tr. 22, 24, 26)  Thus, the ALJ did not solely rely upon C.J.N.'s cooperative and friendly behavior in finding less than marked limitations, but fully and adequately considered the affect of his speech and language delays in the domain.  Substantial evidence in the record supports his conclusion. *C.f., Royster o/b/o J.R.R. v. Comm'r of Soc. Sec.*, No. 19-CV-01250, 2020 WL 7640934, at *4 (W.D.N.Y. Dec. 23, 2020)  (remanding where ALJ failed to discuss or cite any related to speech evaluations or language difficulties, instead focusing on social skills in finding less than marked limitations in this domain).  Here, the ALJ reasonably concluded that the record indicated that C.J.N. had some limitation in interacting and relating with others, but the evidence failed to establish a marked limitation in this functional domain.  (Tr. 25-26) *See generally, Dailey v. Comm'r of Soc. Sec.,* No. 14-CV-1518, 2016 WL 922261, *6 (N.D.N.Y. Feb. 10, 2018), *adopted*, 2016 WL 917941 (N.D.N.Y. Mar. 10, 2016) ("[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.").

### Moving About and Manipulating Objects

The domain of moving about and manipulating objects considers how a child moves his or her body from one place to another, and how he or she moves and

manipulates things. See 20 C.F.R. § 416.926a(j). Newborns and infants should begin at birth to explore their world by moving their bodies and using their limbs; learn to hold their heads up, sit, crawl, and stand, and sometimes hold onto a stable object and stand actively for brief periods; and begin to practice their developing eye-hand control by reaching for objects or picking up small objects and dropping them into containers. See 20 C.F.R. § 416.926a(j)(2)(i). Older infants and toddlers should begin to actively explore a wide area of their physical environment, using their bodies with steadily increasing control and independence from others; start to walk and run without assistance, and climb with increasing skill; frequently try to manipulate small objects and use their hands to do or get something they want or need; and their improved motor skills should enable them to play with small blocks, scribble with crayons, and feed themselves. See 20 C.F.R. § 416.926a(j)(2)(ii).

In this domain, the ALJ found that C.J.N. had no limitation. (Tr. 27) He considered plaintiff's testimony that C.J.N. experienced wheezing with activity and was more easily fatigued than other children, but also observed that C.J.N. had not been assigned limitations due to those symptoms, which also reportedly improved with medication. (Tr. Tr. 27, 38-39, 41-43; see Tr. 609-12). C.J.N.'s father testified that C.J.N. had limited interest in using utensils to feed himself, however the record showed that he was now able to use spoons or forks and brush his teeth with help. (Tr. 27, 40; see Tr. 591)

The ALJ further recognized that C.J.N. had received physical therapy for below average lower body and core strength, with improvement; and as the ALJ noted, he also underwent therapy to improve fine motor skills, and was able to match blocks, reach for

assistance or to indicate interest in something, use stickers, run, walk upstairs, kick a ball, and jump. (Tr. 27, see Tr. 591, 692-93, 695, 713-18, 762-63)

Plaintiff is correct that the ALJ did not specifically discuss a letter from physical therapist Rosemary Wright (date illegible), which requested approval for bilateral supramalleolar ortheses "to provide support and alignment to his legs and feet so [C.J.N.] can progress in gross motor skills acquisition for activities such as walking on changing surfaces, climbing, jumping and age appropriate play." (Tr. 607-08; see Dkt. No. 9-1 at 27)  The ALJ did, however, expressly consider C.J.N.'s parents' testimony that he used a foot brace (see Tr. 20) and he was able to run, walk upstairs, kick a ball, and jump. (Tr. 27; see Tr. 591)  The ALJ did not err in this regard. *See, e.g., Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").

Here, the ALJ reasonably observed that although C.J.N. appeared to have been below average in his fine and gross motor skills, he had improved, and the record suggested that he had attained at or near age-appropriate ability in that area. (Tr. 27) The Court therefore finds that the ALJ did not err in concluding that C.J.N. had less than marked limitation in the domain of moving about and manipulating objects.

### Health and Physical Well-Being

The domain of health and physical well-being refers to the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's functioning that were not considered in the domain of moving about and manipulating objects.  See 20 C.F.R. § 416.926a(l).  This domain addresses how

recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being. *See id.*

In this domain, the ALJ found that C.J.N. had less than marked limitation. (Tr. 26-27) The ALJ discussed that, although as a result of his tricuspid valve abnormality and PFO, C.J.N. would likely need surgery at some point, he had nevertheless remained stable during the relevant period, and his condition had progressed to the point that he could undergo cardiac evaluations only once a year. (Tr. 28-29; *see* Tr. 42, 224, 227) In addition, the ALJ noted that C.J.N.'s pulmonary hypertension and his episode of SVT presented no further concerns, and he had been taken off propranolol. (Tr. 29, *see* Tr. 224, 227) The ALJ also recognized that C.J.N. reportedly had some fatigue with activity, but his cardiologists did not limit his activity levels. (Tr. 29, see Tr. 224, 227) Moreover, the ALJ noted, despite a history of several urgent care, emergency, and pediatrician visits for upper respiratory symptoms, his providers had not provided any specific limitations, although they had recommended keeping an eye on him due to some wheezing and coughing, which was recently assessed as likely caused by tracheomalacia for which he used asthma-like medications. (Tr. 29, see Tr. 609-12, 626-29) The ALJ also observed that, at his physical examinations, C.J.N. was noted to have good overall development, with no limitations in growth despite his impairments, as well as improved eating skills. (Tr. 29, see Tr. 223, 226, 591-93, 615) In reaching his conclusions as to this domain, the ALJ again recognized that C.J.N. had motor delays associated with some weakness in his core and lower extremities, but noted that nothing in the record indicated that they would be long-term concerns or otherwise affected C.J.N.'s physical well-being. (Tr. 29,

see Tr. 715-16) The Court finds that substantial evidence supports the ALJ's finding that C.J.N. had a less than marked limitation in the domain of health and physical well-being.

Because the ALJ properly found that C.J.N. did not have marked limitations in two functional domains or an extreme limitation in one functional domain, C.J.N. did not have an impairment or combination of impairments that functionally equaled a listed impairment. See 20 C.F.R. § 416.926a(a). Accordingly, the ALJ reasonably concluded that C.J.N. was not disabled within the meaning of the Social Security Act.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

SO ORDERED.

Dated:   February 16, 2021
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge